RICHARD L. HOLMES, Retired Appellate Judge.
In November 1994 Fred D. Cotney and four other property owners (collectively referred to as the Cotneys) from the Andrew Jackson subdivision (subdivision) filed a complaint against Charles W. Parrott and Edna W. Parrott. The complaint alleged that the Parrotts were in breach of certain restrictions and conditions of the subdivision.
The Parrotts filed an answer and a counterclaim. The Cotneys filed an answer to the counterclaim.
The case proceeded to a non-jury trial. Thereafter, the trial court issued an order, finding in favor of the Cotneys. The Par-rotts filed a motion to alter, amend, or vacate, which was denied.
The Parrotts appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Initially, we would note that in a non-jury ease, the trial judge is the finder of fact and *872 that a presumption of correctness attaches to his findings and to the judgment based on those findings. Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala.1985). The resulting judgment will not be disturbed on appeal unless it is manifestly unjust, palpably wrong, or without supporting evidence. Clardy, 477 So.2d 350.
Our review of the record reveals the following pertinent facts: Madison Street Office Building, Inc. (Madison Street), developed the Andrew Jackson subdivision. In August 1968 Madison Street employed an engineer/land surveyor to prepare the plat for the subdivision. Additionally, Madison Street prepared the subdivision’s restrictions and conditions and recorded both the subdivision plat and the restrictions and conditions in the Tallapoosa County probate office.
In March 1969 Madison Street conveyed the subdivision to Wind Creek Farms, Inc. (Wind Creek). In March 1971 Wind Creek mortgaged the subdivision, excepting certain lots, to Union Bank & Trust Company (bank). In August 1976 the bank foreclosed on the property.
The Cotneys acquired their lots in the subdivision between the years of 1983 and 1991. In June 1987 Charles Parrott (Charles) acquired several lots in the subdivision by a quit-claim deed from the bank. The quit-claim deed conveyed a lot designated as “Lot 23” in Block 3. In August 1993 Charles conveyed his interest in the property to Edna W. Parrott.
We would note that the recorded subdivision plat contained an area designated as “PARK,” which was located adjacent to and between Lots 22 and 24 of Block 3. Additionally, we would note that there is no Lot 23 in Block 3 of the recorded subdivision plat. The recorded subdivision restrictions and conditions stated the following, in pertinent part:
“8. All streets and roads are dedicated to public use for roadway and utility purposes. All areas designated as parks and parking area are hereby dedicated to the property owners of this subdivision.”
The subject of the present dispute is that area designated as “PARK” on the recorded subdivision plat and as “Lot 23” in Block 3 in the June 1987 quit-claim deed from the bank to Charles.
The Parrotts raise several issues on appeal. First, the Parrotts contend that the trial court committed reversible error when it failed to apply equitable estoppel in this case. The Parrotts argue that the Cotneys should be estopped from bringing this present action because they “sat by” and watched the Parrotts construct a house on the property without objection or any action on their part.
Charles testified that he began construction on the property in 1987 or 1988. The Cotneys testified that they first noticed construction on the property in 1990 or 1991. The Cotneys testified that they met with Charles on more than one occasion to advise Charles that the lot had been designated as a “PARK” for use by the property owners, that the “PARK” had been used by the property owners for the purpose intended, and that Charles should not build on the lot.
We agree with the trial court’s statement that “[tjhere is nothing in the evidence to indicate that [the Cotneys] have taken any position inconsistent with their present position.” Therefore, the trial court properly denied the equitable estoppel defense.
Second, the Parrotts contend that the trial court committed reversible error when it determined that the area in Block 3, which was designated as “PARK” on the recorded plat, was “for the common use of all property owners within this subdivision.”
The trial court stated the following in its order: “The court is reasonably satisfied from the evidence that [the Parrotts] have clearly violated the terms of the restrictive covenants applicable to the property in question by erecting, structures thereon, and [the structures] must be removed.”
The Parrotts correctly contend that there can be no dedication to private owners or interests. However, as stated in Scheuer v. Britt, 218 Ala. 270, 271, 118 So. 658, 660 (1928):
“ Where the owner of a tract of land adopts a general scheme for its improve *873 ment, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.
“"Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, or from, the surrounding circumstances, that the grantor intended to create an easement in favor of the purchaser.’ 4 Thompson on Real Property, § 3398.”
(Emphasis added in Scheuer.)
In both its recorded subdivision plat and its restrictions and conditions document, Madison Street indicated its intent that the areas designated as “PARK” be restricted for use as parks. The deeds refer to the recorded subdivision plat. As previously noted, Madison Street indicated in the recorded subdivision plat its intent that the areas designated as “PARK” be used by the property owners in such a manner.
In fact, the evidence revealed that a boat ramp and bathhouse were located on the “PARK” property when Charles purchased the property and that several of the owners used the area to launch their boats and to swim. Otha Cotney, one of the owners, testified that he told Charles the following: It had been Otha’s understanding when Otha purchased his lots that there was a park for all of the lot owners to use and that Otha had been using the park “a whole lot.”
In light of the foregoing, we cannot find that the trial court committed reversible error when it determined that the Parrotts “violated the terms of the restrictive covenants applicable to the property in question.”
Third, the Parrotts contend that the trial court committed reversible error when it awarded attorney fees to the Cotneys. It is well settled that there is no basis for the trial court to award attorney fees absent a contract allowing such an award; a statute authorizing such an award; or by special equity where a common fund, out of which fees can be paid, is created. Reynolds v. First Alabama Bank of Montgomery, 471 So.2d 1238 (Ala.1985). None of these factors is present in this case. Therefore, we reverse that portion of the trial court’s judgment and remand to the trial court for proceedings consistent with this opinion.
Last, the Parrotts contend that the issues raised in this case are moot because they have amended the “conditions, restrictions, and limitations” of the subdivision by obtaining the consent of 80% of the property owners. The issue of mootness was raised in the Parrotts’ post-judgment motion, which was denied.
Our review of the record reveals that an amendment to the subdivision restrictions and conditions was prepared on September 8, 1995, and was recorded on September 27, 1995. At the trial the Parrotts admitted to the trial court that the needed consent had not been obtained. The Cotneys indicate that the trial took place on September 9, 1995, and the Parrotts do not dispute that this was the trial date or that the amendment was prepared prior to the trial date. The Parrotts did not introduce anything in addition to the amendment to the subdivision restrictions and conditions to substantiate that they had, in fact, obtained the needed consent. Consequently, there is nothing in the record to support their contention that the issues raised in this case are moot.
The judgment of the trial court is affirmed in part, reversed in part, and remanded.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.