In October 1993 Daryl Harms and Terry Johnson, d/b/a H.J. Realty, a general partnership ("partnership"), filed a complaint against Jefferson County, Alabama, and its commissioners (hereinafter collectively referred to as County), seeking a declaratory judgment. Specifically, the partnership requested that the trial court declare certain restrictive covenants existing on a piece of property invalid and unenforceable. Karl G. Johnson, Martha R. Johnson, and Rita E. Tucker, property owners in the Woodmeadow subdivision ("intervenors"), intervened in the proceedings, seeking to have the restrictive covenants enforced.
The case was tried without a jury. After hearing testimony from numerous witnesses, including urban planning experts, an appraiser, and the Jefferson County Zoning Administrator, and after reviewing an extensive amount of documentary evidence, the trial court entered a 13-page judgment, wherein it declared the property to be free and clear from the restrictive covenants. Thereafter, the County and the intervenors filed a joint post-judgment motion, which was denied.
The intervenors appeal. We note that the County does not appeal from the judgment. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
At the outset we would note that in a non-jury case, the trial judge is the finder of fact and that a presumption of correctness attaches *Page 783 
to his findings and to the judgment based on those findings.Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala. 1985). The resulting judgment will not be disturbed on appeal unless it is manifestly unjust, palpably wrong, or without supporting evidence. Id. at 350.
Our review of the record reveals the following pertinent facts: The property at issue is located in Jefferson County, Alabama, and consists of approximately 4 1/2 acres. The property is fronted by Lorna Road, which is a four-lane major commercial thoroughfare.
In 1985 Mary Hartsfield, the owner the property, filed an application with the County, seeking to have the property rezoned from A-1 (Agriculture) to C-1 (Commercial). She requested the rezoning in contemplation of selling the property to E.D. "Sunny" King, who planned to construct and operate an automobile dealership thereon. Hartsfield consented to the development of an automobile dealership and, prior to selling the property to King, imposed the following restrictive covenants on the property:
 "1. Said real property shall be used as and for an automobile dealership only.
 "2. That no outside loud speaker system shall be used or operated during Church Services (Saturday) of the First Seventh Day Adventist Church located at 3520 Lorna Road, Birmingham, Alabama 35226.
 "3. A 100-foot buffer shall be left in its natural state on the South and West property lines of said real property adjacent to the residential property."
In 1985 the County rezoned the property for commercial use. The intervenors legally challenged the rezoning, causing delays and forcing King to build elsewhere. Thereafter, in 1988 King sold the undeveloped property to the partnership. As stated previously, the partnership filed a complaint, seeking to have the restrictive covenants declared invalid and unenforceable.
We find it appropriate at this point to note that "restrictive covenants are not favored in the law and will therefore be strictly construed by [the] Court. All doubts must be resolved against the restriction and in favor of free and unrestricted use of the property." Lange v. Scofield,567 So.2d 1299, 1301 (Ala. 1990).
In determining that the restrictive covenants should be extinguished, the trial court applied two legal theories, referred to as "the relative hardship test" and "the change of conditions test." The intervenors contend that the trial court's findings under both theories are erroneous.
According to "the relative hardship test," "a covenant will not be enforced if to do so would harm one landowner without substantially benefiting another landowner." Lange, 567 So.2d at 1302. In applying "the relative hardship test," the trial court determined that enforcement of the restrictions would not benefit the intervenors, but would burden the partnership with a substantial hardship. Specifically, the trial court determined that the restrictions unduly burdened and inhibited the partnership from selling, marketing, and/or developing the property.
At trial three urban planning experts testified that the property was not appropriate for an automobile dealership. The trial court appropriately set forth the following findings of fact relevant to the marketability of the property:
 "The subject property is and has been available for sale and has been actively marketed by the [partnership]. Numerous discussions have been had with potential automobile dealers and with potential commercial purchasers. From 1985 to the present time, no potential commercial user and, in particular, no automobile dealership has entered into any binding contracts or agreements to purchase the subject property to be used as and for an automobile dealership. Moreover, no offers have been made that would allow the [partnership] to sell the subject property without suffering a significant economic loss."
Furthermore, the evidence reveals that the majority of dealerships are now classified as "mega" because they sell many different makes of automobiles and that such dealerships generally require 10 to 20 acres of land on which to operate. The evidence also reveals that automobile dealerships tend to *Page 784 
"cluster" in one general area. Kenneth J. Groves, an urban planner in Birmingham, stated that Highway 31 in Hoover has developed as the location of choice for automobile dealerships in the vicinity.
We also find it ironic that, when the property was first rezoned as commercial in 1985, the same intervenors filed complaints, objecting to the proposed use of the property as an automobile dealership. Moreover, the testimony presented by the expert witnesses clearly indicates that there are other, more appropriate, uses for the property which would present less of a burden on the intervenors than would an automobile dealership.
Under "the change of conditions test," the partnership presented an abundance of evidence indicating that the character of the neighborhood surrounding the encumbered property had changed so drastically that the original purpose of the restrictive covenants could no longer be accomplished.See Lange, 567 So.2d at 1301.
Aerial photographs, which were dated 1982, 1985, 1988, and 1993, were introduced at trial and clearly indicate that a "change of conditions" has occurred in the area surrounding the intervenors' neighborhood and the subject property. The trial court made the following findings of fact, which are clearly supported by the evidence:
 "The construction, opening, and expansion of the Riverchase Galleria shopping mall since the subject property was rezoned in 1985 has had a substantial impact on commercial development in and along the Lorna Road area. Lorna Road is a four-lane major commercial thoroughfare. . . . There is limited frontage along Lorna Road available for future commercial development, and the subject property is one of the few remaining tracts with frontage on Lorna Road. The property immediately across Lorna Road from the subject property is zoned commercial, and substantial commercial development has occurred within a one-mile radius surrounding the subject property. No commercial development has occurred within the established boundary lines of the Woodmeadow subdivision property.
 ". . . Within the past ten years there has been tremendous commercial development in the area surrounding the Woodmeadow subdivision. . . . The property . . . located immediately west of the Woodmeadow subdivision . . . has been developed with a large shopping center."
We reiterate that the property is already zoned for commercial use. Furthermore, the expert testimony clearly indicates that the intervenors will be protected through applicable County and/or City zoning laws and ordinances, which will apply to any future development of the property.
After carefully reviewing the voluminous record, we conclude that the trial court, in balancing the interests of the parties, did not err in finding the restrictive covenants to be overly broad and burdensome. Additionally, we conclude that the trial court did not err in finding that fundamental and substantial changes had occurred since the restrictive covenants were originally imposed on the property. Consequently, other issues raised by the intervenors are pretermitted, and the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.